UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81230-CIV-HURLEY

GLOBAL ONE FINANCIAL, INC.,

      plaintiff,

vs.

INTERMED SERVICES, P.A.,
SHAHEED KALLOO and
CAROL VARONIQUE,

      defendants.

_____/

### MEMORANDUM OPINION & FINAL JUDGMENT AGAINST DEFENDANT INTERMED SERVICES, P.A.

**THIS CAUSE** involves post-judgment proceedings initiated by plaintiff Global One Financial, Inc. ("Global One") against Intermed Services, P.A. ("Intermed") in effort to collect on a state court judgment previously obtained against All Care Medical Services, Inc. ("All Care"), a Florida corporation owned and operated by defendants Shaheed Kalloo, M.D. ("Dr. Kalloo"), and his wife, Carol Varonique.

Following a waiver of jury trial by all parties, the case was tried before the court at a bench trial on April 13, 2015. Timothy Veith, general counsel and corporate representative for plaintiff Global One, testified at trial. Plaintiff also introduced excerpts from the deposition testimony of the defendant, Dr. Shaheed Kalloo. On the defense, Dr. Kalloo personally appeared and testified.

At the outset of trial, the parties jointly stipulated to the voluntary dismissal of the conspiracy claim asserted against the individual defendants, Dr. Kalloo and his wife, Carol Varonique (Count 6), as well as the equitable lien claim asserted against Intermed (Count 5), leaving Intermed as the sole remaining defendant in the case.  The issue presented as to this defendant is whether Intermed may be held liable for the prior judgment against All Care under a theory of fraudulent transfer of assets, or under the  related  "mere continuation" of business doctrine.

Having carefully considered all of the testimony and exhibits admitted at trial, the court now makes the following findings of fact and conclusions of law.

## I.  FINDINGS OF FACT

1.  All Care is a Florida corporation formed in 1998 for purpose of providing medical treatment to the public.  Dr. Kalloo and his wife, Carol Varonique, were the sole owners and shareholders of All Care, holding 51% and 49% of its shares respectively.

2.  In December 2006, the Florida Department of Health filed an administrative complaint against Dr. Kalloo's medical license related to allegations of sexual misconduct made by several of  his female patients.  Parallel criminal proceedings were also lodged against Dr. Kalloo in Florida state court.  In April 2010, Dr. Kalloo settled the administrative complaint with the Department of Health with an agreement to accept continuing education, a fine and certain restrictions on his medical license.

3.  Global One is a Georgia corporation which obtained a final judgment against All Care in the Superior Court of Gwinnett County, Georgia, on July 2, 2010 in the principal amount of $744,790.25 plus interest.  At trial, the parties indicated the judgment resulted from a default in repaying a loan in the approximate amount of $1,000,000.

4.  In October 2010, Global One began the process of domesticating its foreign judgment against All Care by filing suit in  Florida state court, *Global One Financial Inc. v. All Care Medical Services,* Palm Beach Circuit Court Case No. 50-2010-CA-027305XXXX MB.  In the course of those proceedings, Global One garnished a bank account owned by All Care at Bank of America and collected $4,285.87 pursuant to this garnishment writ.

5.  On January 11, 2011 -- approximately six months after entry of the Georgia judgment  -- All Care, without undertaking the normal dissolution process, ceased doing business in Florida, and Dr. Kalloo formed a new business entity, Intermed Services, P.A. ("Intermed"), for the purpose of providing medical treatment to the public.  Dr. Kalloo was and is the sole owner of Intermed.

6.  Intermed used the same office space as that previously occupied by All Care at 1115 45th Street, West Palm Beach, Florida, and used the same furniture, medical apparatus and office equipment previously used by All Care.  Intermed claims it paid All Care $120 for patient examination tables, but acknowledges the money was never deposited into All Care bank account.  Other than this disputed amount, Intermed did not pay any money to All Care in exchange for taking over its business.

7. Intermed used the same phone number as that previously assigned to All Care, and assumed care of 75 patients formerly under Dr. Kalloo's supervision at All Care.

8. Initially, All Care lost 50 female patients due to the license restriction imposed by the Florida Department of Health; however, when this restriction was modified to permit Dr. Kalloo to treat female patients in the presence of a female nurse, he regained these patients in his practice under Intermed. Also as a result of the license restriction, and related criminal complaints, Dr. Kalloo lost his privileges at a number of area hospitals where he worked as an on-call emergency room physician, resulting in loss of a sizable segment of his patient referrals (approximately 2/3 of new patients). After resuming practice under the name of Intermed, he attempted to offset the loss of this patient population base by developing a new business plan which catered to an elderly patient population through house-calls.

9. Dr. Kalloo testified that he decided to form Intermed because he lost almost 90% of his patients as a result of the license restriction, and the debts accruing against All Care as a result of his dwindling office practice appeared insurmountable. He stated that he formed Intermed in January 2011, one month after Global One garnished his Bank of America account and froze all of the All Care accounts.

10. On November 26, 2013, Global One filed this lawsuit against Intermed, Dr. Kalloo and Carol Varonique seeking enforcement of the deficiency balance owed on the underlying Georgia judgment against All Care. On April 8, 2014, Global One received $628,123.94, representing the surrender proceeds of a life insurance policy used as collateral

on the underlying debt of All Care, and applied those proceeds to the final judgment owed

by All Care, leaving a remaining judgment of $292,537.27 as of April 8, 2014.

## II.  CONCLUSIONS OF LAW

### A.  Fraudulent Transfer

Under § 726.105 (1) (a) of the Florida Uniform Fraudulent Transfer Act (UFTA), any

transfer made with "actual intent to hinder, delay or defraud" any present or future creditor

is deemed a fraudulent transfer.  Alternatively, under § 726.106 of the UFTA, applicable to

a creditor whose claim arose *before* the transfer, a transfer is fraudulent if the debtor did not

receive equivalent value and the debtor was or became insolvent as a result of the transfer

– regardless of the existence of fraudulent intent. *Nationsbank, NA v. Coastal Utilities, Inc.*,

814 So.2d 1227, 1231 (Fla. 4th DCA 2002).  Because of the difficulty of proving actual

intent, case law and the UFTA look to indicia of intent, commonly referred to as "badges of

fraud," as a premise for interring intent.  § 726.105(2); *Cleveland Trust Co v. Foster*, 93

So.2d 112 (Fla. 1957).

In this case, the court concludes that fraudulent intent of All Care's principal, Dr.

Kalloo, may be presumed from evidence of the following "badges of fraud" delineated in

§ 726.105(2):

(a)  the transfer of All Care patient files and assets to an "insider" as defined by

§726.102(7);

(b)  Dr. Kalloo's retention of possession or control of the patient files and assets after

the transfer;

(c) the transfer occurred shortly after a substantial debt was incurred by All Care, i.e. shortly (within six months) after All Care suffered a $744,790.25 judgment in a Georgia state court, and within one month of the time plaintiff implemented garnishment proceedings to collect on the judgment;

(d) the transfer of patient files from All Care to Intermed consisted of substantially all of All Care's assets of any value.

In essence, Dr. Kalloo simply transferred the assets of one company, in which he and his wife were the sole shareholders, to another P.A. which he solely owned and controlled, without meaningful consideration and within six months of the entry of a substantial judgment against the first company. Because the transfer occurred between two corporations largely controlled by the same individual, without consideration, or for grossly inadequate consideration, fraudulent intent is presumed, and the successor company is appropriately held liable for fraudulent transfer under § 726.105, Fla. Stat. (2013). *Florida Brogdex Distrib., Inc. v. Hulsey*, 138 So. 728 (Fla 1931).

Under §726.106(1), the Florida UFTA alternatively creates a statutory category of constructive fraud to protect present creditors, recognizing certain transactions as "fraudulent" without regard to the debtor's actual intent. *Amjad Munim, M.D., P.A. v. Azar*, 648 So.2d 145 (Fla. 4th DCA 1994). A transfer is constructively fraudulent under this subsection if the debtor made the transfer while insolvent and without receiving reasonably

equivalent value in exchange for the transfer or obligation.  Under the UFTA, a debtor is "insolvent" if the sum of his debts is greater than his assets at a fair valuation, § 726.103(1), Fla. Stat. (1993), or  a debtor is presumed insolvent if he is generally not paying his debts as they become due, § 726.103(2).

The court finds the elements of constructive fraud established in this case, based on the undisputed evidence that All Care transferred all its patient files and good will (generated by Dr. Kalloo) to Intermed without receiving reasonably equivalent value in exchange for the transfer, thus  providing an alternative theory to support the imposition of liability against Intermed for the outstanding balance owed on the prior judgment entered against All Care.

Dr. Kalloo did not establish sufficient facts to rebut the presumption of fraudulent transfer raised by this chronology.  Dr. Kalloo argues that the patient files and good will of his old company lacked value because his medical practice was virtually destroyed by the allegations of sexual misconduct and related criminal and administrative proceedings against him, which resulted, among other things, in the placement of a no-female treatment restriction and later a no-unsupervised female treatment restriction against his license. Because of this, Dr. Kalloo argues his old company lacked good will or value, and therefore could not be the subject of a fraudulent transfer.  However, this overlooks the central fact that the patient files of All Care constituted an asset of substantial  value, and that the transfer of this asset to Intermed harmed All Care by eliminating its sole means of earning revenues to pay the Georgia state court judgment.

Based on undisputed evidence presented at trial, the court concludes that Dr. Kalloo ceased rendering medical services as All Care and formed Intermed to impede the rights of an existing judgment creditor, and that final judgment in favor of plaintiff and against Intermed based on fraudulent transfer, either under § 726.105 or §726.106 is appropriate in this case.  *See Amjad Munim, M.D., P.A. v. Azar*, 648 So.2d 145 (Fla. 4th DCA 1994) (medical professional association's transfer of assets to newly formed medical association 12 days after entry of judgment against predecessor association constituted fraudulent conveyance where predecessor transferred patient files and assets to new association, sole shareholder and president of association retained control of assets after transfer, transfer was of substantially all of the predecessor's assets, there was no consideration received for the assets, and the transfer occurred shortly after substantial debt was incurred).

## B.  Mere Continuation of Business

The court also finds Intermed is appropriately held liable for the Georgia judgment entered against All Care under a "mere continuation of business" theory.

The concept of continuation of business arises where a successor corporation is merely a continuation or reincarnation of a predecessor corporation under a different name. *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451 (11th Cir.) (*en banc*), *reh'g denied*, 765 F.2d 154 (1985).  The key element of a continuation is a common identity of the officers, directors and stockholders in the selling and purchasing corporation.  *Id.*  The concept is a variation of a "*de facto* merger," which occurs where one corporation is absorbed by another,

but without compliance with the statutory requirements for merger.  In such instance, the

imposition of liability upon the successor corporation for obligations of the former is

grounded on the premise that no corporation should be permitted to commit a tort or breach

of contract and avoid liability through corporate transformation in form only.  See *Azar,*

*supra* at 154.

The test for the existence of either a *de facto* merger or "mere continuation of

business" is whether there is effectively a continuity of the selling corporation evidenced by

such things as the same management, personnel, assets, location and stockholders. *Id.*, citing

*300 Pine Island Assoc. v. Steven L. Cohen & Assoc.*, 547 So.2d 255, 256 (Fla. 4th DCA

1989).

Applying this standard here, the court finds, based on undisputed evidence presented

at trial, that Intermed is a "mere continuation" of the business of All Care, the original

medical services corporation owned and controlled by Dr. Kalloo.  All Care ceased rendering

medical services six months after the Georgia judgment entered against it.  Intermed, Dr.

Kalloo's new business model, provided the same type of medical services in the same office

with the same equipment, the same patients (with some new business in a geriatric patient

base), the same office manager (Dr. Kalloo's wife) and the same primary medical care

provider, Dr. Kalloo, who was the primary owner of each entity.  This situation mirrors that

discussed by the Fourth District Court of Appeal in *Azar*:

> For all intents and purposes, the new P.A. is the old P.A. dressed up with a
> new name and controlled by the same individual.  We agree...that [the new

company] is a mere continuation of the business of [the old company] because it has the "same management, personnel, assets location and stockholder" as that of [the old company]."

....

[A] professional association cannot simply cast off one corporate identity in favor of another in order to evade the effect of a previously existing judgment against the debtor P.A.

*Azar* at 154-155.

This court thus concludes that Intermed is appropriately held liable on the prior Georgia judgment against All Care under a theory of "mere continuation of business," regardless of the existence of any element of fraudulent intent on the part of Dr. Kalloo.

### III.  DECRETAL PROVISIONS

Based on the foregoing, the court finds sufficient evidence to sustain the plaintiff's claims against Intermed based on fraudulent transfer and mere continuation of business theory.

It is accordingly **ORDERED AND ADJUDGED**:

1.  The defendant Intermed, is liable on the pre-existing  Georgia  judgment against All Care, and  is properly held responsible for the  deficiency balance owed on that judgment as of April 8, 2014, the date on which  surrender proceeds from Dr. Kalloo's life insurance policy were recovered and applied to that debt, plus prejudgment interest on that balance running from April  8, 0214 to the present date.

2.   Accordingly, **PLAINTIFF, GLOBAL ONE FINANCIAL, INC**., shall take and recover the sum of $292,537.27[1] against **DEFENDANT INTERMED SERVICES, P.A.**, together with pre-judgment interest accruing from April 8, 2014 in the sum of $18,703.50, for the  **TOTAL SUM of $311,240.77**,  for which let execution issue.

3.   The claims against defendants **SHAHEED KALLOO and CAROL VARONIQUE** (Count 6 - Conspiracy) are **DISMISSED WITH PREJUDICE** pursuant to stipulation of parties announced in open court.

4.   The claim for equitable lien against defendant **INTERMED SERVICES, P.A.** (Count 5) is **DISMISSED WITH PREJUDICE** pursuant to stipulation of parties announced in open court.

5.   The court  reserves jurisdiction to tax costs against defendant Intermed.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 16th day of April, 2015.

_____
Daniel T. K. Hurley
United States District Judge

cc.  All counsel

---

[1]   All Care originally suffered judgment in the amount of $744,790.25 in the Georgia state court proceedings.  Post judgment interest accruing on that original sum up through February 18, 2011 amounted to $29,460.03; after a set-off  for the funds garnished from All Care's Bank of America account ($4,285.87) on February 18, 2011, All Care owed a deficiency balance of $769,964.41 as of February 19, 2011.

Post judgment interest accruing on that deficiency balance up through April 8, 2014, the date of the recovery of surrender proceeds on the  life insurance policy,  totaled $150,696.80; after a set off for the life insurance surrender proceeds ($628,123.94), All Care owed a deficiency balance of $292,537.27 as of April 8, 2014.